FILED

2014 Sep-30  PM 04:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **REBECCA ANN STEELMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **5:13-cv-01259-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social** | ) | |
| **Security,** | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM OPINION

Plaintiff Rebecca Ann Steelman ("Steelman") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA").  This court finds that the Administrative Law Judge's ("ALJ") decision, which has become the decision of the Commissioner, is supported by substantial evidence.  Therefore, for the reasons elaborated herein, the court will AFFIRM the decision denying benefits.

## I.  Procedural History

Steelman, whose past relevant experience includes work as a retail sales clerk, hotel cleaner, lab technician, and a customer service representative, filed an

application for Title XVI Supplemental Security Income on July 6, 2010, alleging a disability onset date of November 1, 2008, due to a hysterectomy, multiple surgeries, knee problems, muscle and nerve damage, memory problems, problems with sitting and standing, hypertension, and high blood pressure.  (R. 24, 150). After the SSA denied Steelman's claim, she requested a hearing before an ALJ. (R. 79).  The ALJ subsequently denied Steelman's claim, (R. 24-31), which became the final decision of the Commissioner when the Appeals Council refused to grant review.  (R. 1).  Steelman then filed this action for judicial review pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g).  Doc. 1.

## II.  Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards.  *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. § 405(g) mandates that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the

final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). A physical or mental impairment is "an impairment that results from anatomical, physiological, or

psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ found that Steelman had not engaged in substantial gainful activity since July 6, 2010, and, therefore, met Step One.  (R. 26).  Next, the ALJ found that Steelman satisfied Step Two because she suffered from the severe impairments of "essential hypertension" and an "affective mood disorder."  *Id*.  The ALJ then proceeded to the next step and found that Steelman failed to satisfy Step Three because she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments."  *Id.*  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four where he determined that Steelman has the residual functional capacity (RFC) to perform

> a full range of work at all exertional levels but with the following non-exertional limitations. The claimant can understand, remember and learn simple work routines and work with simple instructions, but should not perform work activity that requires detailed instructions. She can carry out simple instructions with sustained attention for an 8-hour workday. She can tolerate ordinary work pressures, but should not be required to perform work activity with excessive workloads or work activity that requires quick decision making, rapid changes, or multiple demands. She can adapt to infrequent changes and would be able to perform short-term planning, but would need help with long term planning or goal setting. She would need work activity that requires only occasional contact with the general public and may miss a day of work, every other month.

5

(R. 27).  In light of her RFC, the ALJ held that Steelman "is capable of performing

past relevant work as a hotel cleaner."  (R. 31).  Therefore, the ALJ found that

Steelman "has not been under a disability, as defined in the Social Security Act,

since July 6, 2010, the date the application was filed"  (R. 31).

## V.  Analysis

The court now turns to Steelman's contentions that the ALJ failed to (1)

consider her impairments in combination in his  RFC assessment and (2) obtain a

medical source opinion or vocational expert testimony to properly develop the

record in making his RFC determination.  The court will examine each contention

in turn.

###   A.      ALJ Properly Considered the Medical Evidence in Making RFC
Decision

Steelman first contends that the ALJ failed to properly consider her

impairments in combination in making his RFC findings.  Doc. 11 at 5-8.

Steelman specifically argues that "[t]he ALJ was somewhat dismissive of [her]

substantial history of treatment associated with bladder impairments as prior to the

date of the SSI application," claiming that "the ALJ did not even include history of

surgical repairs totaling seven to the bladder as well as vaginal and rectal walls."

Doc. 11 at 5.  She also contends that her ability to "maintain standing, walking,

and sitting tolerances at all or any exertion levels would be reasonably affected by [her] obesity," and that the ALJ marginalized her obesity "by considering it to be a non-severe impairment." Doc 11 at 7.   As a result, Steelman argues that, when these conditions are properly considered in combination with her other established physical and mental conditions, her conditions "preclude sustained competitive work or at the very least would result in an RFC more restrictive than determined by the ALJ." Doc. 11 at 8.

Steelman's contentions are unavailing because the ALJ properly considered the medical evidence in making his RFC assessment.  In fact, because "residual function capacity is an assessment, based on all of the relevant evidence of a claimant's remaining ability to do work despite his impairments," *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), the ALJ recognized his duty that he "must consider all of the claimant's impairments, including impairments that are not severe." (R. 25).  Moreover, the ALJ specifically stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the medical evidence" in making his RFC findings.  (R. 27). This finding alone was sufficient to show that the ALJ considered all of Steelman's impairments, including her impairments that were non-severe, in assessing her RFC. *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529,

7

1533 (11th Cir.1991) (ALJ's consideration of the claimant's combined

impairments at later steps in the sequential evaluation process is sufficient to show

the impairments were considered in combination).

      More significantly, the ALJ thoroughly discussed Steelman's treatment

history for bladder problems and obesity.  Contrary to Steelman's contentions, the

ALJ noted that Steelman "has a significant history of treatment for female

problems and urological problems, with several procedures prior to the date of her

application." (R. 28).  The ALJ noted that Steelman reported improvement after a

procedure in June 2009 and had additional procedures in March 2010 and June

2010.  (R. 29).  However, the ALJ emphasized that "on July 20, 2010, only a few

days after she filed for disability benefits, [Steelman] was cleared to return to

normal activities." (R. 29).  The ALJ also found Steelman's medical records "did

not show [that she] was experiencing significant limitations," (R. 29), and that

"while the records show the claimant has a significant history of treatment, with

numerous surgeries for her medical problems, records relevant to her application

date are not supportive of the limitations she alleges," (R. 30).  In support of this

finding, the ALJ emphasized Steelman's self-reported improvement and noted that

Steelman continued to perform work activity as recently as February 2010.  (R.

28).  In fact, Steelman indicated that she considered starting and operating a

business in October 2011, (R. 646), and reported that her job at Kohl's Department Store was "going okay" in February 2010, (R. 652).

Similarly, the ALJ also properly considered Steelman's obesity in making his RFC determination, and substantial evidence supports the ALJ's RFC assessment.  Contrary to Steelman's contention that "[t]he ALJ marginalized her obesity by considering it to be non-severe," doc. 11 at 7, the ALJ committed no error because "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," so long as the ALJ considered the claimant's impairments, whether severe or not, in combination at the later steps. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010).  The record here shows clearly that the ALJ properly considered Steelman's obesity in making his RFC findings and found that "even considering the combined effects of [her] impairments, [Steelman] retains the [RFC] to perform work activity at all levels of exertion."  (R. 31).  Significantly, the ALJ specifically addressed Steelman's obesity and noted that "[she] did not allege functional limitations due to her weight" at the hearing.  (R. 26).  The ALJ further found that "the record is inconsistent with any physician stating the claimant's weight significantly limits her or has resulted in impaired functioning," and that "the record is inconsistent with showing this impairment has impacted on her muscuoloskelatal system or

9

general health as to cause her treating physicians to diagnose her with impairments secondary to or in combination with obesity." (R. 26).

Put simply, contrary to Steelman's contentions, the ALJ's RFC assessment was based on all of the relevant evidence, which include both severe and non-severe impairments. As a result, the court finds that the ALJ applied the correct legal standards in making his RFC determination, and that the record contains substantial evidence to support the ALJ's decision.

B.    The ALJ Properly Developed the Record

Citing, 20 C.F.R. § 416.929(b), Steelman argues that the ALJ's RFC findings were not based on substantial evidence because the ALJ did not ask for the opinion of a medical expert. Doc. 11 at 8. According to Steelman, the case is due to be remanded for "further development and proceedings to include reevaluation of the record with assistance of a [medical expert] and with vocational expert (VE) testimony as warranted." *Id.* at 8-9. Steelman overlooks, however, that the regulations and law of this circuit do no impose such a requirement. Rather, the pertinent regulation provides that opinions on issues reserved to the Commissioner, such as a claimant's RFC, are not medical opinions:

> Opinions on some issues, such as the examples that follow, are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are

dispositive of a case; i.e., that would direct the determination or
decision of disability.

20 C.F.R. §§ 404.1527(d), 416.927(d).  One of the specifically reserved examples

is a claimant's RFC:  "Although we consider opinions from medical sources on

issues such as . . . your residual functional capacity . . . the final responsibility for

deciding these issues is reserved to the Commissioner."  20 C.F.R. §§

404.1527(d)(2), 416.927(d)(2).  Consequently, the Eleventh Circuit has recognized

that "the task of determining a claimant's residual functional capacity and ability

to work is within the province of the ALJ, not of doctors."  *Robinson v. Astrue*,

365 F. App'x 993, 999 (11th Cir. 2010) (unpublished).  Moreover, an ALJ's RFC

finding can be supported by substantial evidence even without a medical source

statement in the record.  *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 922-23

(11th Cir. 2007) (unpublished) (rejected the claimant's argument "that without

[the physician's] opinion, there [was] nothing in the record" to support the ALJ's

RFC assessment).

Here, the ALJ properly relied on Steelman's treatment records and other

evidence to assess her RFC. For example, the ALJ noted "[Steelman] alleged an

inability to work due to her impairments, but continued to report a significant level

of activities" and found that she "has shown a level of functioning, inconsistent

with her allegations and inconsistent with significant limitations." (R. 28).  The

ALJ found also that Steelman "showed no limitations in performing her personal

care," noting that

> she cared for her daughter and her dog. She prepared meals daily,
> performed small chores, watered the flowers, and did the laundry and
> the dishes. She also indicated she went out of the house daily, drove a
> car, and shopped in stores. She was able to pay bills, count change
> handle a savings account, and use a checkbook or money orders.
> Hobbies and interests included watching television and reading to her
> daughter. She also indicated she spent time with others and went to
> the rehab clinic daily

*Id*.

Finally, the ALJ found that the medical evidence did not support the level of

functioning Steelman alleged.  *Id*.  To support this finding, the ALJ discussed

Steelman's extensive "history of treatment for female problems and urological

problems" and noted that "she was cleared to return to normal activities" on July

20, 2010, only a few days after she filed for disability.  (R. 29).  The ALJ also

considered Steelman's treatment records at Huntsville Recovery that indicated that

she "was considering going into business and . . . that [she] had actually performed

work activity while in treatment at that facility."  (R. 29).  The ALJ further

concluded that the "[r]ecords from other sources in 2010 and 2011 also failed to

show that [Steelman] was experiencing limitations that would prevent all work

activity."  (R. 29).  "Accepting the findings of Dr. [Sharma] Bhvana, which

showed no significant physical limitations," the ALJ concluded that Steelman's medical records relevant to he application date were not supportive of her alleged limitations.  (R. 30).  Because sufficient medical evidence existed to allow the ALJ to assess Steelman's RFC and determine whether she was disabled, the record was complete.  *See* 20 C.F.R. § 404.1513(e).  Consequently, no additional development was required, and the ALJ committed no reversible error by failing to utilize a medical expert.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Steelman is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination.  Therefore, the Commissioner's final decision is affirmed. A separate order in accordance with the memorandum of decision will be entered.

Done this 30th day of September, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE